# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE

Assigned on Briefs October 8, 2013

## STATE OF TENNESSEE v. DARRYL THOMAS HARMON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007A633        Cheryl A. Blackburn, Judge**

---

**No. M2011-01895-CCA-R3-CD - Filed December 5, 2013**

---

A Davidson County jury found the Defendant, Darryl Thomas Harmon, guilty of two counts of aggravated robbery and one count of attempted aggravated robbery. The trial court sentenced the Defendant to an effective sentence of eleven years in the Tennessee Department of Correction. On appeal, the Defendant contends that the evidence is insufficient to sustain his convictions. After a thorough review of the record and applicable authorities, we conclude there exists no error in the judgments of the trial court. Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Nathan Moore, Mount Juliet, Tennessee, for the appellant, Darryl Thomas Harmon.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This case arises from the Defendant's robbery of three victims who were walking home from class at night. The Defendant and two other males drove up next to the victims,

got out of the car with guns drawn, forced the three victims onto the ground, took the victims' wallets, and physically assaulted the victims. A Davidson County grand jury indicted the Defendant for two counts of aggravated robbery and one count of attempted aggravated robbery.

## A. Trial

At the Defendant's trial, the parties presented the following evidence: Timothy Trussell testified that on December 9, 2006, he was walking home one night from a meeting with two friends, Jonathon Garrett and David Fambro. He recalled that, as he walked, a car pulled up behind him and his two friends and parked near where they were walking. Two men got out of the car "with guns" and made Trussell and his friends "get on the ground and took all [their] wallets and whatnot." He testified that the two men with the guns ordered him to "[g]et down, [and] don't look at my face" and that he "got down." Trussell said when he looked up, he saw the barrel of a gun, and the robber said, "[D]on't look at me." He stated that the two men removed his wallet from his pocket and took it, as well as the wallet of Garrett. He stated that because Fambro did not have a wallet, they kicked him while he was on the ground. Trussell testified that five dollars was in his wallet when it was stolen.

Trussell testified that after the two men with guns took his property, they got back in their car and drove away. Trussell and his two friends then ran toward their own house. Trussell later saw the gunmen's car driving around the block, and he called the police. He stated that a third person was in the car in the driver's seat while the two men robbed him and the other victims. Trussell testified that he relayed the same details to the officers who responded to his 911 call.

Trussell testified that the car used in the robbery was a "four door, silver car." He stated that the two gunmen were probably around eighteen to twenty-five years old but that he did not get a good look at the driver's face. Trussell testified that the gunmen were African American and that one of the men wore a red shirt.

Trussell testified that while he was being questioned by the officer, they learned that another officer had detained potential suspects for the robbery. Trussell stated that the police escorted him to the other side of the neighborhood to view the suspects and that he identified one of them as one of the two people who got out of the car with their guns drawn. Trussell testified that he could not identify the driver. He stated that when he got back to the police station, the police returned his wallet to him. He said that everything except the money was is in the wallet.

Trussell testified that at the police station he was shown a photographic lineup in an

attempt to identify the second person who robbed him. Trussell stated that he was asked to sign his name under the photograph that he identified and that he wrote, "[c]annot decide between [photograph] three and [photograph] four" on the lineup sheet. Trussell stated that he could not identify with certainty the second robber.

Johnathon Garrett testified that on December 9, 2006, he was the victim of an armed robbery. He recalled that three people got out of a car, armed with guns, and that they made Garrett and his two friends lie face down on the ground. Garrett stated that the gunmen told him and his friends that, "if we looked up they would shoot us." Garrett stated that the gunmen stole his wallet containing about one hundred dollars in cash. He testified that after the robbery, the three men got back in the car and that he and his two friends ran to their own house and called the police.

Garrett testified that the police responded to the house and later took the victims to a location where a police officer had detained some suspects. Garrett stated that he identified the two detainees as the same men who had been involved in the robbery. He stated that the police officers later gave him his wallet back but that the money was not in it. Garrett testified that he was asked to view a photographic lineup in an attempt to identify the third person involved in the robbery. On the lineup sheet he wrote, "[c]annot be certain between [photograph] number two and [photograph] number 4."

Garrett testified that on the day of trial he had had an opportunity to view the Defendant throughout the morning in the courtroom. Garrett stated that the Defendant was the third person involved in the robbery that occurred on December 9, 2006.

On cross-examination, Garrett testified that he remembered the Defendant from the robbery and that he could remember all the robbers wearing dark red shirts. He reiterated that he remembered seeing three people get out of the car.

Detective Robert Bristol testified that he is employed by the Metropolitan Police Department Auto Theft Unit and that he responded to the armed robbery call on December 9, 2006. He stated that he spoke to the victims and took the report of the incident. He stated that while speaking to the victims, he received a call from another officer that a vehicle matching the victims' description had been detained. He recalled that the victims were transported to the location where the vehicle was stopped, which was about a quarter of a mile from the victims' house.

Officer Vixay Sengkhounmany testified that he was on patrol the night of December 9, 2006, and that he responded to an armed robbery call in the area. He testified that a description of the suspects was dispatched over the police radio and that shortly after hearing

the description, he spotted a vehicle that matched the description. He stated that the description given was that the vehicle would be "traveling on Lutie Street, a gray silver color Ford Taurus, three males black, one with a red hoodie." He stated that immediately after the dispatch, he saw a "silver vehicle come my way[,]" that he noticed it was a Ford Taurus, and that it had three occupants in it. He said the three occupants "appeared to be black. And one of them definitely had on a red hoodie." Officer Sengkhounmany said that he followed the car and that when he did so, the front passenger door of the vehicle opened and a person in a red "hoodie" started fleeing on foot. At that point, Officer Sengkhounmany activated his emergency equipment, but he stayed behind the vehicle and the other two occupants. Officer Sengkhounmany testified that the victims of the robbery were brought to the location to view the suspects.

On cross-examination, Officer Sengkhounmany reiterated that the dispatcher's description of the suspects included a red "hoodie," "male blacks[,]" and a gray silver Ford Taurus. He stated that the person in the red "hoodie" who opened the front passenger door and ran out was not apprehended the night of the crime.

Detective Joseph Winter testified that he participated in a search of the vehicle that Officer Sengkhounmany pulled over and that he found a wallet in the backseat and a wallet in the front seat of the car. These were later identified as belonging respectively to Trussell and Garrett. He stated that his police report indicated that the wallets were empty.

Detective Winter testified that he prepared a photographic lineup that included a picture of the Defendant and showed it to the victims. He stated that he told the victims not to make an identification unless they were one hundred percent certain that the person who committed the crime was in the lineup. He reiterated that Trussell was unable to identify any of the photographs with one hundred percent certainty, but that Trussell selected photographs three and four. He also reiterated that Garrett was unable to make an identification with complete certainty but that he narrowed it down to two photographs as well, numbers two and four. Detective Winter said that photograph number four was of the Defendant.

Detective Brandon Dozier testified that he responded to the scene where the robbery suspects were stopped by Officer Sengkhounmany. He stated that he was present when the victims were brought to the scene and that they identified one of the suspects on the scene as the person who robbed them. He stated that the suspect they identified was the Defendant's brother, Donovan Harmon. He stated that while on the scene, an older female arrived and asked where the Defendant was and left when she was told he was not there.

Rhonda Evans testified that she is a crime scene investigator and that she processed the evidence found in the suspects' vehicle that night, as well as the vehicle itself. She

testified that she lifted fingerprints off the vehicle and sent them to the latent examiners for identification.

Linda Wilson testified as an expert witness in the field of latent fingerprint examination. She explained that her position as a police identification analyst entails comparing fingerprints lifted from crime scenes to identify the source of the fingerprints. She testified that she examined the latent fingerprints lifted from the vehicle and that she identified one of the prints as the Defendant's. She stated that the fingerprint was lifted from the driver's side rear door of the vehicle.

Glenn Hardy, who was convicted in this case of armed robbery, took the stand and refused to testify under oath. His testimony from his trial was read into the record in the presence of the jury. His testimony was that he was driving the vehicle that passed the victims and that the Defendant told him to stop the car. He testified that when his vehicle pulled up alongside the three victims, the Defendant said to his brother, "Let's get them[,]" and they immediately jumped out of the car. Hardy stayed in the vehicle, and when the Defendant and the Defendant's brother came back to the vehicle, they told Hardy they had robbed someone, so he sped off in the vehicle. He testified that a police vehicle got behind his vehicle and that the two passengers "got mad at him" when he stopped the car. He said, "That's why [the Defendant] hopped out of the car and took off running."

Donovan Harmon, the Defendant's brother, testified that he was convicted of aggravated robbery in connection with the December 9, 2006 incident. He testified that Mr. Hardy participated in the crime with him but denied that the Defendant was ever in the vehicle with them. He denied that anyone jumped out of the vehicle when it was stopped by the police. Harmon testified that his statement to police, that he and his brother, the Defendant, had robbed the victims, was a lie. Harmon testified that he pleaded guilty for his crimes, and when he was asked if he remembered the State's plea colloquy which described the Defendant's involvement in the robbery, he stated that he did not remember the plea colloquy.

Donna Harmon, the Defendant's mother, testified that she came to the scene where the vehicle was pulled over because she was told that her son, Donovan Harmon, had been shot. She denied coming to the scene to look for the Defendant and said that the detective's testimony related to her coming to the scene looking for the Defendant was not true.

Based upon this evidence, the jury convicted the Defendant of two counts of aggravated robbery and one count of attempted aggravated robbery.

## B. Sentencing Hearing

At the Defendant's sentencing hearing, the trial court admitted into evidence the presentence report. The trial court found that the Defendant was a Range I offender and that the Defendant had a previous history of criminal convictions, as well as a prior failure to comply with the conditions of a sentence involving his release into the community. The trial court also found one mitigating factor; the Defendant had turned himself in to police.

The trial court imposed eleven-year sentences for each of the Defendant's aggravated robbery convictions, with a 30 percent release eligibility, and a five-year sentence for the attempted aggravated robbery conviction. The trial court ordered the three sentences to be served concurrently, for a total effective sentence of eleven years. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant contends that the evidence is insufficient to sustain his convictions because "no rational trier of fact could have reached a guilty verdict based on the facts presented." The Defendant contends that the two victims could not identify the Defendant at the time of the incident and that the identification made in the courtroom was "tainted" because the Defendant was sitting at counsel table in the courtroom and was the victim's "only option[.]" The State counters that the Defendant's fingerprint on the vehicle used in the robbery and the identification by Garrett at trial is sufficient independent evidence to corroborate Hardy's testimony at his own trial to support the Defendant's convictions. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] 'is the same

whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

### A. Aggravated Robbery Conviction

A conviction for aggravated robbery, as relevant to this case, requires proof beyond a reasonable doubt that the Defendant committed an "intentional or knowing theft of property from the person of another by violence or putting the person in fear" and that the robbery was "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. §§ 39-13-401(a), -402

(a)(1) (2010).

The evidence presented at trial, viewed in the light most favorable to the State, proves that the three victims were walking home when a silver Ford Taurus pulled up alongside them and that two men got out with their guns pointed at the victims. The vehicle was driven by a third person. The three victims were forced to the ground with the guns continuously pointed at them, and two of the victims, Trussell and Garrett, had their wallets taken. This is sufficient evidence to prove to the jury beyond a reasonable doubt that aggravated robberies were committed against Trussell and Garrett.

### B. Attempted Aggravated Robbery Conviction

An attempted aggravated robbery consists of an attempt to commit the "intentional or knowing theft of property from the person of another by violence or putting the person in fear," and the robbery is "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. §§ 39-13-401(a), -402(a)(1) (2010). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3) (2010). Therefore, criminal attempt requires two material elements: (1) the culpability required for the attempted crime; and (2) an act in furtherance of the attempted crime. *Wyatt v. State*, 24 S.W.3d 319, 323 (Tenn. 2000).

The evidence, viewed in the light most favorable to the State, shows that David Fambro, the third victim, did not have a wallet in his pocket but that he was forced to the ground at gunpoint in an attempt by the Defendant to steal his wallet. The testimony showed that the robbers searched Fambro for a wallet but that they did not find one. This was sufficient evidence to prove beyond a reasonable doubt that an attempted aggravated robbery was committed against the third victim, Fambro.

The Defendant argues that the proof of his identity as a participant is insufficient because the victims were unable to identify him with certainty in a photographic lineup, which he claims is "*per se* reasonable doubt" for the purposes of "criminal identity" and that the only evidence presented at trial was an in-court identification. He further argues that without an identification by the victims as corroboration, Hardy's testimony identifying him as a perpetrator is uncorroborated accomplice testimony and should be "deemed inadmissible."

It is well-settled that in Tennessee, "a conviction may not be based solely upon the uncorroborated testimony of an accomplice." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). The law in Tennessee regarding accomplice testimony has been described as follows:

> The rule simply stated, is that there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

*Shaw*, 37 S.W.3d at 903 (quoting *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994) (citations omitted)). Whether sufficient corroboration exists is a determination for the jury. *Bigbee*, 885 S.W.2d at 803.

The evidence in this case, viewed in the light most favorable to the State, shows that Glen Hardy, the driver of the vehicle, testified under oath that he, the Defendant, and Donovan Harmon were riding in a car when they spotted the three victims. The Defendant and Donovan Harmon said, "Let's get them." Hardy testified that the Defendant robbed the victims of their property while pointing his gun at them and that after the Defendant and Donovan Harmon got back into the car, Hardy drove away.

Officer Sengkhounmany testified that after the victims made their report to the police, he spotted a silver Ford Taurus with three occupants matching the victims' descriptions, including the description that one of the occupants was wearing a red "hoodie." When the vehicle was pulled over, the officer observed the occupant in the red "hoodie" flee the scene. The remaining occupants in the vehicle were Glen Hardy and Donovan Harmon, who both later made statements to the police or testified that the Defendant was the third occupant of the vehicle. The Defendant's fingerprint was also found on the vehicle. When presented with a photographic lineup that contained the Defendant's picture, two of the victims were able to narrow their selection down to two photographs, and both of their selections included the Defendant's photograph. One of the victims later identified the Defendant in the courtroom as the armed robber. This evidence is sufficient to corroborate Hardy's testimony identifying the Defendant as the third perpetrator of this crime. The Defendant is not entitled to relief on this issue.

## III. Conclusion

Based on the record and aforementioned authorities, we conclude that the evidence is sufficient to sustain the Defendant's convictions.  We, therefore, affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE